## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FUJIFILM NORTH AMERICA
CORPORATION,

        Plaintiff,

        v.

D/C EXPORT & DOMESTIC PACKING,
INC.,

        Defendant.

_____

D/C EXPORT & DOMESTIC PACKING,
INC.,

        Third-party Plaintiff,

        v.

CARGO MARITIME, INC.,

        Third-party Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 17 C 6680

Chief Judge Rubén Castillo

## MEMORANDUM OPINION AND ORDER

In this diversity action, Fujifilm North America Corporation ("Plaintiff") alleges that D/C

Export & Domestic Packing, Inc. ("Defendant") mishandled a commercial printing machine

belonging to Plaintiff while it was stored at Defendant's warehouse in Elk Grove Village,

Illinois, resulting in damage to the printer. (R. 1, Compl. ¶¶ 5-14.) Plaintiff asserts a variety of

state-law claims against Defendant. (*Id.* ¶¶ 15-42.) Defendant moves for summary judgment on

all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. (R. 30, Mot.; R. 31,

Mem.[1]) For the reasons set forth below, Defendant's motion is granted in part and denied in part as stated herein.

## RELEVANT FACTS

The following facts are undisputed unless otherwise stated. Plaintiff is a New York corporation with its principal place of business in Valhalla, New York. (R. 46, Pl.'s Resp. to Facts ¶ 2.) Defendant is an Illinois corporation providing warehouse services for hire. (*Id.* ¶ 1.) Third-party defendant Cargo Maritime, Inc. ("Cargo Maritime") is a freight forwarder that arranges transportation, storage, and other logistics services on behalf of its customers.[2] (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 4.) As a freight forwarder, Cargo Maritime does not itself transport, store, or otherwise physically handle its customers' cargo; instead, it procures those services from motor carriers, warehousemen, and other logistics service providers. (*Id.*)

In September 2016, on behalf of Plaintiff, Cargo Maritime arranged to have one of Plaintiff's "Graphium" commercial printing machines transported from a trade show in Rosemont, Illinois, and placed in storage. (*Id.* ¶ 13; R. 46, Pl.'s Resp. to Facts ¶ 6.) On

---

[1] None of Defendant's motion-related filings were searchable PDFs, contrary to the Court's requirement that parties convert all briefs and memoranda directly to PDF—rather than printing and scanning—and run character recognition on all other filings (*e.g.*, exhibits). See Judge Castillo Case Procedures – Motion Practice, https://www.ilnd.uscourts.gov/judge-info.aspx?/yhCO3oG+ns=. Nevertheless, in the interest of efficiency, the Court will proceed to the merits of the motion rather than strike these filings for noncompliance. Defendant's future filings should conform to this requirement.

[2] Defendant disputes this characterization of Cargo Maritime, responding to Plaintiff's Local Rule 56.1(b)(3)(C) statement of additional facts that it "does not have sufficient knowledge or information to admit or deny the allegations . . . and therefore, denies those allegations." (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 4.) This is not a proper way to respond under Local Rule 56.1, which requires squarely admitting or denying Plaintiff's additional facts. N.D. ILL. L.R. 56(a); *Ricco v. Sw. Surgery Ctr., LLC*, 73 F. Supp. 3d 961, 965 (N.D. Ill. 2014); *see also Bledsoe v. Potter*, No. 03 C 3890, 2005 WL 2230188, at *3 (N.D. Ill. Sept. 7, 2005) ("Responses such as 'without sufficient information to admit or deny' are unacceptable at the summary judgment stage."), *aff'd*, 200 F. App'x 604 (7th Cir. 2006). Because Defendant did not respond in the appropriate manner, Plaintiff's characterization of Cargo Maritime is deemed admitted, as are the other proposed facts that Defendant responded to in this fashion. *Hartford Ins. Co. v. A. Block Mktg., Inc.*, No. 04 C 5523, 2005 WL 1838447, at *2 (N.D. Ill. Aug. 2, 2005) ("Generally, stating that one does not have sufficient information to admit or deny a Local Rule 56.1 statement of fact constitutes an admission of that fact.").

September 13, 2016, Cargo Maritime contacted Defendant and requested a quote to have the printer picked up, transported, and stored in Defendant's warehouse in Elk Grove Village, Illinois. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 14.) The next day, September 14, 2016, Defendant responded to Cargo Maritime's quote request with a quote that included a storage fee of $1,612.40 per month. (*Id.* ¶ 15.) On either September 16 or 17, the printer, which weighs 27,398 pounds, was picked up from the trade show and delivered to Defendant's warehouse. (*Id.* ¶ 16; R. 46, Pl.'s Resp. to Facts ¶ 6.)

Defendant has provided warehousing services to Cargo Maritime's customers since 2012. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 5.) In prior dealings with Defendant, Cargo Maritime provided a "Due Diligence Checklist" to Defendant which stated the following:

> It is a strict requirement and policy of Cargo Maritime, Inc. for warehouse companies when handling our cargo, to adhere to the Cargo Maritime Warehouse Due Diligence check list.
>
> 1. Safety comes first to Cargo Maritime ***Please have your personnel HANDLE CARGO WITH GREAT CARE***
>
> 2. Keep our cargo away from traffic and hazardous cargo.
>
> 3. At all times cargo must be kept in a covered facility.
>
> 4. Cargo can not be re-handled or moved around inside covered facility, unless Cargo Maritime Inc. is notified beforehand and a cargo surveyor is in attendance when doing so.
>
> 5. If any forecast of extreme environmental conditions that may potentially cause harm to our cargo; Cargo Maritime, Inc needs to be forewarned so we can take precautionary measures.

(*Id.* ¶ 7.) Kimberly Padovano ("Padovano"), Defendant's Customer Administrator who was responsible for the handling the Cargo Maritime account, understood that Defendant was required to abide by the Due Diligence Checklist. (*Id.* ¶¶ 9-10.) Padovano also understood that Cargo Maritime expected Defendant to adhere to the requirements in the Due Diligence

Checklist. (*Id.*) Paul Michalak ("Michalak"), Defendant's Vice President of Operations, also received the Due Diligence Checklist and does not recall ever telling Cargo Maritime that Defendant could not, or would not, adhere to its requirements. (*Id.* ¶ 11.)

On September 22, 2016, Defendant issued two warehouse receipts to Cargo Maritime for the printer. (*Id.* ¶ 21; R. 46, Pl.'s Resp. to Facts ¶ 7.) The front side of each warehouse receipt included the following message:

> This is TO CERTIFY THAT WE HAVE RECEIVED the property listed hereon in apparent good order, except as noted herein . . . SUBJECT TO ALL TERMS AND CONDITIONS INCLUDING LIMITATION OF LIABILITY HEREIN AND ON THE REVERSE HEREOF.

(R. 46, Pl.'s Resp. to Facts ¶ 8 (capitalization in original); R. 46-1, Askgaard Decl., Ex. I.) The reverse side of each warehouse receipt set forth Defendant's "Standard Contract Terms and Conditions for Merchandise Warehousemen" (the "Standard Terms and Conditions"). (R. 46, Pl.'s Resp. to Facts ¶ 9.) Section 1(a) of the Standard Terms and Conditions states:

> This contract and rate quotation . . . must be accepted within 30 days from the proposal date by signature of depositor on the reverse side of the contract. In the absence of written acceptance, the act of tendering goods described herein for storage or other services by warehouseman within 30 days from the proposal date shall constitute such acceptance by depositor.

(R. 46-1, Askgaard Decl., Ex. I; R. 50, Def.'s Add'l Facts ¶ 16.) Section 11 of the Standard Terms and Conditions addresses Defendant's liability for loss or damage to warehoused goods:

> (a) THE WAREHOUSEMAN SHALL NOT BE LIABLE FOR ANY LOSS OR INJURY TO GOODS STORED HOWEVER CAUSED UNLESS SUCH LOSS OR INJURY RESULTED FROM THE FAILURE BY THE WAREHOUSEMAN TO EXERCISE SUCH CARE IN REGARD TO THEM AS A REASONABLY CAREFUL MAN WOULD EXERCISE UNDER LIKE CIRCUMSTANCES AND WAREHOUSEMAN IS NOT LIABLE FOR DAMAGES WHICH COULD NOT HAVE BEEN AVOIDED BY THE EXERCISE OF SUCH CARE.

> (b) GOODS ARE NOT INSURED BY THE WAREHOUSEMAN AGAINST LOSS OR INJURY HOWEVER CAUSED.

(c) THE DEPOSITOR DECLARES THAT DAMAGES ARE LIMITED TO 500 TIMES THE BASE RATE OR $0.05 PER POUND, WHICHEVER IS LESS, PROVIDED, HOWEVER, THAT SUCH LIABILITY MAY AT THE TIME OF ACCEPTANCE OF THIS CONTRACT AS PROVIDED IN SECTION 1 BE INCREASED UPON DEPOSITOR'S WRITTEN REQUEST ON PART OR ALL OF THE GOODS HEREUNDER IN WHICH EVENT AN ADDITIONAL MONTHLY CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION.

(R. 46, Pl.'s Resp. to Facts ¶ 10 (capitalization in original); R. 46-1, Askgaard Decl., Ex. I.) The warehouse receipts include a signature block for "Depositor's Acceptance" at the bottom of each page. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 22.) In addition, in the cover letter accompanying the warehouse receipts, Defendant stated "Please find the enclosed warehouse receipt covering the goods stored in our warehouse for your account. After review of the receipt and if everything is order [sic], please have the receipt signed by a duly authorized person. One copy is to be retained for your files and the other returned to this office." (*Id.* ¶ 21.) However, Cargo Maritime never signed the warehouse receipts issued for the printer. (*Id.* ¶ 22.)

In early January 2017, Defendant moved the printer from inside the warehouse building to a 48-foot long van trailer that was parked at one of the building's outdoor loading docks. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 27; R. 46-2, Michalak Dep. Tr. 71:6-74:4.) Defendant moved the printer because it "had a lot of freight moving in and out" of the warehouse, storage space inside the warehouse building was "tight," and the trailer provided "extra storage space." (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 28.) The trailer did not have any temperature controls and was left with its doors open the entire time it sat at the loading dock. (*Id.* ¶¶ 29-30.) Defendant did not notify Plaintiff or Cargo Maritime that it would be moving the printer from inside the warehouse to an outdoor trailer or inquire whether storage in an outdoor trailer might damage the printer. (*Id.* ¶ 31.) According to Michalak, the printer was "only going to be in [the trailer] for a short time to rearrange and move freight in the warehouse." (*Id.* ¶ 28.)

By chance, Plaintiff discovered that its printer was not being stored inside the warehouse when two of its employees visited the warehouse on January 10, 2017, to view the printer and found that it was being stored in the trailer. (*Id.* ¶ 32.) The next day, January 11, Cargo Maritime contacted Defendant questioning why the printer was being stored in a trailer rather than inside the warehouse and asking whether the printer was still being stored outside in the trailer at that point. (*Id.* ¶ 33.) Michalak responded to Cargo Maritime the same day, stating that the printer was "moved into van trailers for short time [sic] as I re-arrange some freight in warehouse." (*Id.* ¶ 34.) Michalak further stated in his email "I will send pictures of freight inside warehouse shortly." (*Id.*) Cargo Maritime responded to Michalak's email, stating "Under no circumstances these Fujifilm machine are to be placed outside regardless if short term – due to the nature of the commodity, that's a given," and "We entrusted DC to keep these machine indoors, that is what we are paying for all these months." (*Id.* ¶ 35; R. 46-1, Askgaard Decl., Ex. K.) Later that day, Michalak responded with an email stating that the printer was now inside the warehouse and attaching a photograph showing the printer inside the warehouse. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶ 36.)

The same day, January 11, 2017, Cargo Maritime sent a preliminary notice of claim to Defendant for damage to the printer. (*Id.* ¶ 37.) Plaintiff claims that, as a result of being stored in the outdoor trailer, the printer was damaged by freezing and other outdoor weather conditions, resulting in a total loss of the printer. (*Id.* ¶ 40.)

# PROCEDURAL HISTORY

On September 15, 2017, Plaintiff filed its complaint with this Court, asserting six claims against Defendant under Illinois law[3] based on the damage to its printer: breach of contract (Count I); bailment (Count II); negligence (Count III); conversion (Count IV); gross negligence (Count V); and "Illinois liability" under 810 ILL. COMP. STAT. 5/7-204(a) (Count VI).[4] (R. 1, Compl. ¶¶ 15-42.) Defendant answered and filed affirmative defenses on November 16, 2017. (R. 17, Answer; R. 18, Aff. Defenses.) At the same time, Defendant filed a third-party complaint against Cargo Maritime. (R. 20, Third-party Compl.) On February 13, 2018, Cargo Maritime filed an answer, affirmative defenses, and counterclaims to Defendant's third-party complaint. (R. 36, Cargo Maritime Answer.) On January 3, 2018, the Court ordered that discovery be completed by March 30, 2018. (R. 24, Min. Entry.)

On February 2, 2018, Defendant filed its present motion for summary judgment. (R. 30, Mot.) Defendant makes a number of overlapping arguments as to each claim. Foremost among its arguments, Defendant contends that Plaintiff's total damages are expressly limited by the limitation of liability stated on the warehouse receipts, and that this limit applies to all of Plaintiff's claims. (R. 31, Mem. at 4-7; R. 52, Reply at 7-9 & n.5.) Based on the weight of the printer, Defendant contends that its total liability in this case, if any, is limited to $1,369.90. (R. 31, Mem. at 5.)

---

[3] While the complaint did not expressly state that Defendant's common-law claims are brought under Illinois law, the Court may assume that is the case because neither party raises a choice of law issue. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises [a] choice of law issue, the federal court may simply apply the forum state's substantive law.").

[4] Under Section 7-204(a), "[a] warehouse is liable for damages for loss of or injury to . . . goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances." 810 ILL. COMP. STAT. 5/7-204(a). Furthermore, "[u]nless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care." *Id.*

As to Plaintiff's breach of contract claim (Count I), Defendant contends that Plaintiff is bound by the limitation on liability found in the warehouse receipts because it is a third-party beneficiary of the warehousing contract between Defendant and Cargo Maritime. (*Id.* at 11-12.) Alternatively, if Plaintiff is not a third-party beneficiary, Defendant contends that it is entitled to judgment on this claim because no contractual relationship existed between Plaintiff and Defendant. (*Id.* at 12 n.5.)

Defendant advances a similar argument as to Plaintiff's bailment claim (Count II) to the extent it sounds in contract: either Defendant's liability for bailment is expressly limited by the warehouse receipts, or Defendant is entitled to judgment because Plaintiff is not in privity with Defendant. (*Id.* at 13-14.) Alternatively, if Plaintiff's bailment claim sounds in tort, Defendant contends that it is entitled to judgment because Plaintiff does not meet the definition of a bailor. (*Id.*)

Defendant argues that it is entitled to judgment on Plaintiff's conversion claim (Count IV) because Plaintiff did not have an absolute and unconditional right to immediate possession of the printer. (*Id.* at 12-13.) Defendant further argues that it did not wrongfully assume control, dominion, or ownership over the printer because whatever damage the printer sustained was merely inadvertent. (*Id.*)

Defendant contends that it is entitled to judgment on Plaintiff's tort claims for negligence (Count III) and gross negligence (Count V) for two reasons: (1) as a matter of law, it exercised reasonable care with respect to the printer, and therefore did not violate the standard of care set forth in the warehouse receipts; and (2) these claims are barred by the economic loss doctrine, which bars tort claims over the subject of a contract. (*Id.* at 7-11.)

Last, Defendant argues that it is likewise entitled to judgment on Plaintiff's statutory claim under Section 7-204(a) (Count VI) because it was not negligent as a matter of law. (*Id.* at 14-15.)

Plaintiff filed its response on May 10, 2018. (R. 47, Pl.'s Resp.) Plaintiff argues that the limitation of liability stated in the warehouse receipts is not effective because Cargo Maritime never accepted the Standard Terms and Conditions by signing the receipts. (*Id.* at 2, 7-8.) Plaintiff argues further that even if it had accepted the Standard Terms and Conditions, Defendant would be precluded from relying on the limited-liability provision because it breached the terms of its own warehouse receipt by storing the printer in an outdoor trailer. (*Id.* at 2, 8-11.) Plaintiff also contends that, in any event, the limitation on liability does not apply to its conversion claim. (*Id.* at 2, 12-14.)

As to its breach of contract and negligence claims, Plaintiff contends that a question of fact exists as to whether Defendant breached the parties' storage agreement and acted negligently by moving the printer to on outdoor trailer without Cargo Maritime's knowledge or consent. (*Id.* at 11-12.) As to its conversion claim, Plaintiff argues that Defendant is guilty of conversion because it "exceeded its authority to possess and control the printer by moving it to an outdoor trailer." (*Id.* at 14.) Plaintiff further argues that this constituted conversion to Defendant's "own use" because it "moved the printer to the trailer in order to gain access to and make room for the storage of other customers' cargo inside the warehouse." (*Id.*) Last, Plaintiff argues that the economic loss doctrine does not preclude its tort claims. (*Id.* at 14-15.)

## LEGAL STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary

judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding a summary judgment motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

As a preliminary matter, the Court is satisfied that subject-matter jurisdiction exists based on diversity of citizenship. *See Scott Air Force Base Props., LLC v. Cty. of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008) ("[I]t is axiomatic that a federal court must assure itself that it possesses jurisdiction . . . before it can proceed to take any action respecting the merits[.]" (citation omitted)). The parties are diverse: Plaintiff is a citizen of only New York and Defendant is a citizen of only Illinois, (R. 46, Pl.'s Resp. to Facts ¶¶ 1-2; R. 20, Third-party Compl. ¶ 1).[5] 28 U.S.C. § 1332(c)(1). The citizenship of Cargo Maritime, although it has been added to the case as a third-party defendant, does not matter because Defendant's third-party claims against it are within the Court's supplemental jurisdiction. *Abbott Labs. v. CVS Pharm., Inc.*, 290 F.3d 854, 858 (7th Cir. 2002) ("Ever since 28 U.S.C. § 1367(a) overturned *Finley v. United States*, 490 U.S. 545[] (1989), the supplemental jurisdiction has been capacious enough to include claims by or against third parties."). The amount in controversy easily exceeds $75,000, *see* 28 U.S.C.

---

[5] Although Defendant's statement of facts pursuant to Local Rule 56.1(a)(3) conspicuously omits its principal place of business, Defendant's third-party complaint alleges that its principal place of business is in Elk Grove Village, Illinois, (R. 20, Third-party Compl. ¶ 1)—an allegation the Court accepts as true.

1332(a), because Plaintiff's complaint seeks compensatory damages in excess of $1.5 million for the loss of its commercial printing machine. (R. 1, Compl. ¶¶ 19, 24, 28, 32, 37, 41.)

## I.    Liability Limitation in Warehouse Receipts

Plaintiff concedes that Illinois law permits a warehouse to limit its liability with a provision to that effect in the warehouse receipt. (R. 47, Pl.'s Resp. at 7.) Plaintiff argues, however, that the liability limitation in the warehouse receipts is not effective because Cargo Maritime never accepted the Standard Terms and Conditions by signing the warehouse receipts. (*Id.* at 7-8.) Plaintiff points out that the warehouse receipts include a signature block for "Depositor's Acceptance," which Cargo Maritime never signed despite Defendant's cover letter expressly requesting that Cargo Maritime sign and return the warehouse receipts. (*Id.* at 5, 7-8.) Plaintiff also argues that Defendant is precluded from relying on the limited-liability provision because it "materially breached" the terms of its own warehouse receipt by storing the printer in an outdoor trailer. (*Id.* at 10.)

Under Illinois' enactment of the Uniform Commercial Code ("UCC"), a warehouse's liability "may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage beyond which the warehouse is not liable." 810 ILL. COMP. STAT. 5/7-204(b). Section 7-204(b) further provides that a depositor may, "at the time of signing the storage agreement or within a reasonable time after receipt of the warehouse receipt" request that the warehouse's liability be increased, in which case the warehouse may charge "increased rates . . . based on an increased valuation of the goods." *Id.*; *see also Allstate Ins. Co. v. Winnebago Cty. Fair Ass'n, Inc.*, 475 N.E.2d 230, 234 (Ill. App. Ct. 1985) ("A warehouseman may limit his liability generally on the condition that the depositor be afforded an opportunity to declare a higher value for which the warehousemen may charge an increased rate.").

The Court concludes that Defendant is entitled to judgment as a matter of law that its liability, if any, is limited in accordance with the terms of the warehouse receipts. The language of Section 7-204(b) itself does not require that a warehouse receipt be signed in order for a liability limitation to be effective, and Plaintiff cites no authority for that proposition. To the contrary, the statutory language suggests that mere "receipt of the warehouse receipt" by the depositor is sufficient, provided that the depositor does not request an increased liability limit. *See* 810 ILL. COMP. STAT. 5/7-204(b). And by distinguishing between "signing" of a storage agreement and "receipt" of a warehouse receipt, Section 7-204(b) further reinforces that a warehouse receipt need not be signed for a liability limitation to become effective. *See id.*

In the few decisions addressing the effectiveness of liability limitations in warehouse receipts under Illinois law, courts have routinely enforced such limitations so long as the warehouse receipt was actually received by the plaintiff and provided adequate notice of the limitation. *See Ronald A. Chisholm, Ltd. v. Fulton Mkt. Cold Storage Co. LLC*, No. 09 C 4623, 2011 WL 6182347, at *5 (N.D. Ill. Dec. 13, 2011) (granting summary judgment of limited liability as stated in warehouse receipt because "there is no dispute that [plaintiff] received the warehouse receipt from [the defendant]"); *W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.*, 719 F. Supp. 697, 702-03 (N.D. Ill. 1989) (enforcing liability limitation stated in rate quotation and warehouse receipt, rejecting plaintiff's argument that "a factual dispute exists as to whether it agreed to the liability limitation"); *cf. Samuel Son & Co. v. Kinder Morgan Arrow Terminals, L.P.*, No. 09 C 6140, 2010 WL 4825666, at *4 (N.D. Ill. Nov. 18, 2010) (granting summary judgment where plaintiff conceded that clause in warehouse receipt

"requiring it to bring suit within nine months of notice of damage" pursuant to 810 ILL. COMP. STAT. 5/7-204(c) was binding if it actually received the warehouse receipt).[6]

In *W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.* ("*Taylor I*"), 719 F. Supp. 697 (N.D. Ill. 1989), for example, the court enforced a liability limitation appearing in the defendant's rate quotation and warehouse receipts that limited its liability to a multiplier of the monthly storage rate. *Id.* at 699-703. Similar to Plaintiff's position here, the plaintiff argued that "a factual dispute exists as to whether it agreed to the liability limitation" because it had not signed the rate quotation containing the liability limitation. *Id.* at 702. The court dismissed this fact as "meaningless" because the rate quotation expressly stated that "the act of shipping the goods constitutes acceptance of" the terms and conditions of storage. *Id.* In addition, the court observed that the reverse side of the warehouse receipts issued by the defendant set forth the same liability limitation in all capital letters. *Id.* at 703. The front of the warehouse receipts, in turn, included a message referring the depositor to the terms and conditions on the back: "The goods listed hereon were received in apparent good order . . . subject to all terms and conditions on the reverse hereof." *Id.* at 700. The court concluded that this "provide[d] sufficient notice" under Illinois law and accordingly enforced the liability limitation. *Id.* at 703.

Although Plaintiff argues otherwise, (R. 47, Pl.'s Resp. at 8), the undisputed facts here are indistinguishable. There is no dispute that Cargo Maritime received the warehouse receipts issued by Defendant. As in *W.A. Taylor & Co.*, the limited-liability provision was printed in all capital letters on the reverse side of the warehouse receipts, as part of Defendant's Standard Terms and Conditions. (R. 46-1, Askgaard Decl., Ex. I.) And like the rate quotation in *W.A.*

---

[6] While these cases are all federal court decisions, they are based on Illinois law. The parties have not identified—and the Court's extensive research has not located—any Illinois state court decisions addressing the effectiveness of liability limitations in warehouse receipts under Section 7-204(b).

*Taylor & Co.*, the warehouse receipts here specify that the act of tendering goods for storage

constitutes acceptance of the Standard Terms and Conditions.[7] (R. 50, Def.'s Add'l Facts ¶ 16.)

Defendant's warehouse receipts also included a message on the front referring Cargo Maritime

to the terms and conditions on the reverse, using language nearly identical to that in *W.A. Taylor*

*& Co.* (R. 46, Pl.'s Resp. to Facts ¶ 8.) This message provided even more explicit notice of the

liability limitation than in *W.A. Taylor & Co.* by specifically calling attention to the *"limitation of*

*liability . . . on the reverse hereof."* (*Id.* (emphasis added).) This provides adequate notice of the

liability limitation, which is sufficient to make it effective under Illinois law.[8] *Taylor I*, 719 F.

Supp. at 703; *see also* ILL. ADMIN. CODE tit. 92, § 1458.200(c) (2018) ("Damages may be limited

by a conspicuous term in the warehouse receipt or storage agreement limiting the amount of

liability in case of loss or damage[.]"); *Strom Int'l, Ltd. v. Spar Warehouse & Distribs., Inc.*, 388

N.E.2d 108, 112-13 (Ill. App. Ct. 1979) (affirming summary judgment in favor of warehouse

because message on front of warehouse receipt referring depositor to "terms and conditions

---

[7] That the rate quotation in *W.A. Taylor & Co.* was provided to the plaintiff before it deposited goods in the defendant's warehouse, *Taylor I*, 719 F. Supp. at 699-700, does not distinguish that case. It is undisputed that Cargo Maritime has utilized Defendant's warehousing services since at least 2012 and has previously received warehouse receipts from Defendant that contain the same terms and conditions. (R. 49, Def.'s Resp. to Pl.'s Add'l Facts ¶¶ 5, 22.) Thus, it undisputedly had notice of Defendant's Standard Terms and Conditions, including that "the act of tendering goods . . . for storage" constitutes acceptance thereof, before arranging to store Plaintiff's printer with Defendant. (R. 50, Def.'s Add'l Facts ¶ 16.)

[8] Courts in other states, by contrast, have required assent in accordance with traditional contract-law principles for any terms in a warehouse receipt to be effective. *See, e.g., Turfgrass Grp., Inc. v. G. Cold Storage Co.*, 816 S.E.2d 716, 721 (Ga. Ct. App. 2018) ("After considering the UCC provisions governing warehouse receipts and harmonizing them with Georgia's contract and bailment law, we conclude that assent is required for terms and conditions in a warehouse receipt to become effective."). While neither party relies on decisions outside Illinois, the Court reads *Strom International, Ltd. v. Spar Warehouse & Distributors, Inc.*, 388 N.E.2d 108 (Ill. App. Ct. 1979), to reject this approach for terms covered by Section 7-204, in favor of considering only whether the warehouse receipt gave adequate notice of the term. In addition, because requiring assent would essentially render the statutory language superfluous, the Court does not believe that the Illinois Supreme Court would adopt this approach if faced with this question. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (explaining that the Court's task in this situation is "to predict how the Illinois Supreme Court would decide the issue[] presented" (citation omitted)).

herein [a]nd on the reverse hereof" gave adequate notice of provision stated on the back of receipt that limited the period for commencing suit).

Plaintiff's argument that Defendant cannot avail itself of the liability limitation because Defendant allegedly breached the parties' storage agreement, (R. 47, Pl.'s Resp. at 2, 8-11), is not persuasive. Plaintiff cites *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265 (Ill. App. Ct. 2009), for the proposition that "a party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him." (R. 47, Pl.'s Resp. at 10.) However, to the contrary, *Dubey* expressly recognized that "[c]ontractual limitations [on liability] are generally held valid in Illinois, unless it would be against the settled public policy of the state to do so or there is something in the social relationship between the parties militating against upholding the agreement." *Dubey*, 918 N.E.2d at 276; *see also First Fin. Ins. Co. v. Purolator Sec., Inc.*, 388 N.E.2d 17, 20 (Ill. App. Ct. 1979) ("In keeping with the principle of freedom of contract, [exculpatory] contractual limitations are generally held valid in this State[.]"). In any event, *Dubey* is distinguishable because it involved a rental agreement for a self-storage unit, and the limitation on liability contained in the agreement was held both (1) invalid under the express terms of the Illinois Landlord and Tenant Act,[9] *Dubey*, 918 N.E.2d at 274-76, as well as (2) procedurally unconscionable, *id.* at 276-77. It was on this basis that the court held that the self-storage company could not rely on the liability limitation: "[defendant] cannot limit [plaintiff's] compensatory damages based on [an] invalid contract provision." *Id.* at 284. Here, by contrast,

---

[9] The applicable statute in *Dubey*, 765 ILL. COMP. STAT. 705/1, provided that "[e]very covenant, agreement or understanding in . . . any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor . . . shall be deemed to be void as against public policy and wholly unenforceable." *Dubey*, 918 N.E.2d at 275.

Section 7-204(b) expressly sanctions liability limitations in warehouse receipts, and Plaintiff does not argue unconscionability.

Because it is undisputed that Cargo Maritime received the warehouse receipts, and because they gave adequate notice of Defendant's Standard Terms and Conditions, the Court concludes that the liability limitation is effective notwithstanding that Cargo Maritime never signed the warehouse receipts. The limitation provides that Defendant's liability is "limited to 500 times the base rate or $0.05 per pound, whichever is less." (R. 46, Pl.'s Resp. to Facts ¶ 10.) Based on the undisputed weight of the printer—27,398 pounds, (*id.* ¶ 6)—Defendant's liability is limited to $1,369.90.[10] This limit applies to Defendant's claims for breach of contract (Count I), bailment (Count II), negligence (Counts III and V), and "Illinois liability" under 810 ILL. COMP. STAT. 5/7-204(a) (Count VI).[11] *See Ronald A. Chisholm, Ltd.*, 2011 WL 6182347, at *5 (granting summary judgment of limited liability based on warehouse receipt as to breach of contract, bailment, and negligence claims); *cf. Inland Metals Ref. Co. v. Ceres Marine Terminals, Inc.*, 557 F. Supp. 344, 349 (N.D. Ill. 1983) (explaining that under Indiana's codification of the UCC, IND. CODE § 26-1-7-204, which is identical to Section 5/7-204(b), "the damage-limiting clause of a warehouse receipt is generally enforceable in negligence actions"). The Court therefore grants Defendant's motion in part as to Counts I-III and V-VI. Defendant's liability is limited to $1,369.90 as to these claims.

---

[10] Neither party suggests that "500 times the base rate" would be less than the weight-based formula.

[11] Under 810 ILL. COMP. STAT. 5/7-204(a), "[a] warehouse is liable for damages . . . caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances." Plaintiff's claim for "Illinois liability" under Section 7-204(a) (Count VI) is duplicative of its negligence claim because the statute imposes the same standard of care that would apply to a negligence claim. *See Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 761 (N.D. Ill. 1994) (equating statutory duty of care under Section 7-204(a) with that imposed under negligence standard).

## II.    Conversion (Count IV)

Section 7-204(b) specifically excludes claims for "conversion to [a warehouse's] own use" from an otherwise-effective liability limitation. 810 ILL. COMP. STAT. 5/7-204(b) ("Such a limitation is not effective with respect to [a] warehouse's liability for conversion to its own use."). Accordingly, the Court turns to the merits of Plaintiff's conversion claim (Count IV).

To prevail on a conversion claim under Illinois law, "a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Zang v. All. Fin. Servs. of Ill., Ltd.*, 875 F. Supp. 2d 865, 879 (N.D. Ill. 2012) (citation omitted).

The Court agrees that, based on the undisputed facts, Plaintiff's conversion claim fails as a matter of law because Defendant did not assume control, dominion, or ownership over Plaintiff's printer. (*See* R. 31, Mem. at 12-13.) Because it is considered an intentional tort under Illinois law, conversion requires "an intentional exercise of dominion or control over a chattel." *Martel Enters. v. City of Chicago*, 584 N.E.2d 157, 159 (Ill. App. Ct. 1991) (citation omitted); *see also Petrovic v. Enter. Leasing Co. of Chi., LLC*, No. 12 C 8677, 2014 WL 714471, at \*3 (N.D. Ill. Feb. 25, 2014) ("Conversion is an intentional tort under Illinois law requiring an intentional exercise of dominion or control over the chattel." (citation and internal quotation marks omitted)). Intentional destruction of another's property can qualify as a conversion. *See Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 770 F.2d 98, 101 (7th Cir. 1985) ("It is not that physical damage can never amount to conversion. If [defendant] had in a rage smashed one of [plaintiff's] cylinders . . . he would be guilty of conversion."); *Taylor I*, 719 F. Supp. at 706 ("If [defendant] in fact bulldozed [plaintiff's] products out the front door, that would unquestionably

18

constitute a conversion."). However, "[m]ere damage, falling short of destruction or material alteration . . . is not treated as conversion." *Taylor I*, 719 F. Supp. at 706 (quoting PROSSER AND KEETON ON TORTS § 15, at 101 (5th ed. 1984)). In addition, "an act which is merely negligent is not sufficient to establish conversion." *Martel Enters.*, 584 N.E.2d at 159-60; *see also Petrovic*, 2014 WL 714471, at *3 ("[A]n act which is merely negligent is not sufficient to establish conversion."); RESTATEMENT (SECOND) OF TORTS § 237 cmt. f (AM. LAW INST. 1965) ("[I]f the goods have been lost, harmed, or destroyed through the negligence of the person in possession . . . such person may be liable for his negligence, but he is not liable for a conversion[.]").

Even drawing reasonable inferences in Plaintiff's favor, *Nat'l Am. Ins. Co.*, 796 F.3d at 723, the undisputed facts show that Defendant was at most negligent in temporarily storing Plaintiff's printer where it would suffer damage from extreme cold. Plaintiff has not come forward with any facts suggesting that Defendant intended to damage the printer by exposing it to extreme cold, or even that Defendant knew it could be damaged by such exposure. Nor did Defendant physically destroy the printer, as by smashing it to pieces or bulldozing it out of the warehouse. *See Refrigeration Sales Co.*, 770 F.2d at 101; *Taylor I*, 719 F. Supp. at 706. Defendant's mere negligence in storing Plaintiff's printer where extreme cold could cause damage to it does not constitute the "control, dominion, or ownership" necessary to establish a conversion claim. *See Refrigeration Sales Co.*, 770 F.2d at 101 (explaining that damage to goods ordinarily does not constitute conversion and concluding that plaintiff's claim based on warehouse's negligence in storing plaintiff's goods, "though called a complaint in conversion in order to defeat [a] limitation clause, . . . states a classic claim for a bailee's negligent damage, not deliberate taking, of goods entrusted to his possession"); *Taylor I*, 719 F. Supp. at 706 (concluding that warehouse's negligence resulting in damage to goods "did not constitute an

unauthorized assumption of 'control, dominion, or ownership'"); *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 575 F. Supp. 971, 977 n.10 (N.D. Ill. 1983) (concluding that plaintiff's claim against warehouse "relating to damaged rather than missing goods, is untenable" under Illinois conversion law), *aff'd*, 770 F.2d 98 (7th Cir. 1985). Accordingly, Defendant is entitled to summary judgment on Plaintiff's conversion claim.

Because the Court's rulings limit Plaintiff's potential damages to under $1,400 and may, as a practical matter, allow the parties to resolve the remainder of this case, the Court declines to address Defendant's remaining arguments for summary judgment on Plaintiff's other claims.[12] Accordingly, Defendant's motion is denied as to Plaintiff's claims for breach of contract (Count I); bailment (Count II); negligence (Count III); gross negligence (Count V); and "Illinois liability" (Count VI), without prejudice to Defendant renewing its arguments at a later time.

---

[12] That this ruling reduces the amount in controversy below $75,000 does not divest the Court of subject matter jurisdiction. *See Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("If the complaint as filed puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages. Whether § 1332 supplies . . . jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction."); *but see Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995) (agreeing that "a court has the *power* to dismiss for want of jurisdiction after deciding that a limitation-of-liability clause (or a state statute) caps damages at less than the jurisdictional amount," if the clause or statute is "so clear, or the legal means of undermining it so weak, that the plaintiff's demand is bound to come under the cap").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (R. 30) is GRANTED IN PART and DENIED IN PART. Based on the undisputed facts, Defendant is entitled to judgment on Plaintiff's conversion claim (Count IV), and Defendant's liability is limited to $1,369.90 as to all other claims. The parties shall appear for a status hearing on September 25, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities in this case.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 11, 2018**